May it please the Court. Good morning, Your Honors. Joshua Bacharach. I represent the appellant Sun Life. This is an appeal from the District Court's grant of summary judgment to Mr. Evans in a risk of disability case. The District Court concluded that the denial of benefits was arbitrary and capricious, meaning, as Judge Kleinfeld stated in the Saloma decision, that it is implausible, illogical, or not supported by any reasonable inferences in the record. Now, before explaining how the District Court erred, I think it's important to look at, briefly, those facts in the record, because, in my view, they support judgment in favor of my client even under a de novo review. There are very few facts supporting this disability claim. Could you help me on a detail of this? Yes, sir. As I recall, one of Mr. Evans' doctors accidentally, his receptionist accidentally, faxed a page from somebody else's record to Sun Life, and they gave it to their medical expert who reviewed the record, and it was a different guy. It was somebody with an alcohol problem, and he'd been on antabuse. So, naturally, Sun Life's doctor thought that Evans had gone on a bender, and that was his only problem. But once it became clear to Sun Life that this was a mistake, it was some different person, Sun Life, as I recall, wrote a letter saying, well, we'll have this reviewed by a different doctor, Clean Slate. But as far as I could tell, they never did. Have I got that history right, or what am I missing? I don't recall them saying they would have it reviewed by a different doctor. It may be there, but I think what happened was, once they received all of the records and they discounted that, there was no proof of a disability during the entire elimination period. Who discounted it? Here it is. What I'm talking about here is, as Sun Life, April 29, 2009, we sincerely regret that error. That information in the medical review which referenced the information has been removed from your file, and you are clearly entitled to a full reconsideration of your claim, both based on your appeal request and by a different medical professional who has not previously seen your file. That's what I was referring to. Well, that's actually quoting from the ERISL regulations to say that they can do that. In this case, they said they were just saying we could do that, but then they didn't. I assume that's what happened here. I don't know that for a fact, but the fact is, Your Honor. So they said you're entitled to it, but they thought it was optional. Well, they thought it was unnecessary because, Your Honor. Who thought it was unnecessary? The medical people? No, it went to an appeal person. When the denial was first done, then on appeal it goes to an appeals person. But they're relying on their medical person who is relying on information that pertains to someone else. And then when you say that they discounted it, you're not saying that a professional medical person reviewed it and discounted it and said it doesn't make any difference. You're saying that the administrators discounted it. So when they discounted it, what basis are they saying he's still not disabled when the basis for their disability was a medical person that made his prognosis or his diagnosis based upon false information? That's not the basis. That's a part of the basis. The basees are the entire administrative record. So what basis is left? If we toss out that medical opinion because it's influenced by something that turns out not to be true, what's left? What's left is his own treating records which don't come close to supporting his claim. I don't know. If he'd gone on a bender for 10 days and didn't become bipolar or something, that would indicate he'd just gone on a bender and he wasn't disabled until later at best. But if he didn't go on a bender for 10 days, then it looks like he had his psychiatric break when he got in a car and went to Vegas. No, Your Honor. He did go on a bender. He took illicit drugs. That's in the records. He did do that. The question is whether he was also taking antabuse, and he did not. But the point of the matter is, Your Honor, let's look at illicit drugs. I don't recall. That's in Dr. Regian's records. I don't recall him taking any dope. What I recall is him trying to commit suicide. And that's not even clear, too, Your Honor, because there's no hospital record. He never goes. I thought the policeman and his wife had him committed after he wrote a note and said he tried to commit suicide. That's weeks later when he returned home. And, by the way, he said weeks in your brief, too. It's 10-plus days. You said weeks in your brief, and I thought weeks had to be a minimum of 14 days to make two weeks, but it was 10 days. And as soon as I saw that S in your brief, it made me wary of the whole brief. All right. Well, Your Honor, let's talk about it. What do you mean by weeks? Well, if 10 to 14 days, because we don't know when. Ten days is weeks? Well, Your Honor, we don't know because we're not. Wait. Ten days we do know. We have the precise dates. Are you saying 10 days is you can legitimately call that weeks in a brief? Your Honor, Your Honor, the record does not show clearly when he left. Some records show it was on December 1st. Some show December 2nd. Some show December 4th. We know that also they say he returned on either the 12th or the 14th, I think. How can you get 14 days out of any of those? Okay. Well, Your Honor, okay. It was close to two weeks. It was definitely over a week. But if we want to talk about incorrect statements, let's look at the appellee's brief. Actually, I wasn't talking about incorrect statements as decisive. I was talking about them in connection with did he just get drunk or did he have a mental breakdown? He clearly had a mental breakdown. We don't dispute that. We don't dispute that. In December, he had a mental breakdown. And when he came back, he had to go to the hospital. His wife arranged for that with the police officer, as you say. We don't doubt that. But the facts remain this, Your Honor. At that time, it was December 2007. He had to remain totally disabled consecutively through May 31, 2008. In February of 2008, Dr. Regian is saying he's only got mild symptoms. We go from a GAF score of 20. I think he said moderate to mild. And the GAF score was still below what a lawyer could perform at. No, Your Honor. We've cited to a Ninth Circuit brief. In another case, I think it was a worker's comp, which says that how could a person be disabled under mild? Now, there's no medical opinion. Say mild or to say mild to moderate? It says mild. It doesn't say moderate as well? My understanding is it says mild. Okay. Because they go from 60. I think they were 63 at one point. It may have been a little higher. Go to the excerpts page because I remembered it as mild to moderate, and I want to be corrected while I remember. The problem here is they give the GAF scores without discussing what they mean. For example here, though, I'm looking at page 357 of the record, and it says highest GAF score this year, 65. And that's from 116.08 during the elimination period. You mean this one that says current GAF 50, highest GAF this year, 65. Right. And as I said, it's in February that they consistently go above 60. In fact, here's one, May 8, 2008, ER 340. It's during the elimination period. It's a 63 GAF score. And that is predominantly what's there you see in the other pages is 63. So that's all we have is these GAF scores which show that, Your Honor, which show mild symptoms. And, Your Honor, I think when you look at the records of Dr. Regian, what does he say? In December he's saying he should be able to return to work by March 1, 2008. He didn't, and he never explained why not. And then he also said in her report. I don't understand why that matters. I mean, a doctor does surgery on a person and says, I think you'll be able to return to work in a week or three weeks or whatever. And then after surgery, things don't go as well as they do with some patients. Maybe they get a complication, an infection. Maybe they're just slow healers. Why does the doctor's prediction of how rapidly a person will recover matter? The Dodgers should have won the World Series last year. But he should have explained it. I mean, they did it. He should have explained why. And this is a perfect example of what I'm talking about with Dr. Regian, Your Honor. This is page 360 of the record excerpts. This is actually from after the elimination period ended because he's discussing the treatment. And in this note, which, pardon me, I have to put my glasses on for, he's talking about the fact that his attention and concentration. I'm looking at page 360. There's no significant difficulty regarding attention and concentration observed. Insight and judgment appear to be good. No evidence of thought or perceptual disorders. Nothing in this report is negative. Nothing at all is negative. And yet, you scroll down to what he eventually says is, based on the above information described above, it is my opinion that he may have difficulty engaging in employment. But nothing described above says that. Nothing in his reports describe any problems that would prevent it. So here's a doctor who is saying he had mild symptoms. In another report, he's saying he made significant progress. Page 360? Yes. He's saying he made significant progress, and yet he's saying he can never work. And, Your Honor, Judge Clifton. That sentence there, no evidence of formal thought or perceptual disorders, including delusions, hallucinations, paranoid ideation, or any problems with reality testing, that means no psychosis. Hallucinations and delusions mean psychosis. They really do not suggest at all the absence of bipolar depression. Well, but then you go down. They have nothing to do with it. Recent or remote memories intact. No difficulty regarding attention and concentration. When he filled out a form a little while later to Sun Life saying he can't work, he said concentration. But here he's saying there are no problems, and he never did testing. That's the important thing here. Judge Clifton, I think it was your opinion in Montour. You made a point of noting that the doctors or the defendant denied benefits when there was no indication of any improvement after they had paid them. Here there was no payment of disability benefits. But the bigger point is that the own treating doctor said significant, not just some improvement, significant improvement based on the medication he was taking. I should hope so. It means he wasn't trying to kill himself anymore. And I agree, and that's the whole purpose of medication, Your Honor. But when you're improved significantly and you only have mild symptoms and your doctor doesn't do any testing, and Your Honor, Judge Kleinfeld. Where does it say mild on 360? It doesn't say mild on 360. No, I didn't see it either. It doesn't. But Your Honor, in your decision in Saloma, you noted that the problem there with the non-treating doctor was there was no testing done by them, there was no in-person, but the treating doctors, this is the key, the treating doctors there did cognitive testing and they found impairment. They did testing that showed no, that there was no malingering going on here. Here Dr. Regin agreed, and by the way, Dr. Winston, the psychiatrist, he stops treating with him a month before, I'm sorry, let me be clear about this, about three weeks before the elimination period ends. Let me stick with 360 for a while, the excerpts page you referred to. Yes, Your Honor. It seems to me it's safe to spring the guy. He doesn't seem to be a threat to himself or others, the doctor says, and it would be potentially therapeutic for him if he could spend reasonable time with his children. But it says he's capable of functioning in terms of providing adequate care for himself. But it also says, although he may have difficulty engaging in employment at this time, I don't see why that means he's fine to work. But why? Why can't he? There has to be a reason. Well, this is somebody who's been involuntarily committed, so the baseline they're working from seems to me to be way over on the scale, and you're managing to assume because they're saying he's not a threat to himself anymore that bingo, he's prepared to be a full-time lawyer. That's a big gap, isn't it? No, I'm saying because, first of all, because there's no problems with concentration, there's no problems with any thought processes, no problems, period, that he should be. How about this, Your Honor? How about the fact that during the 24 months, and I do want to reserve time here, how about the fact that during the 24 months he's claiming he was disabled, he was working as an attorney? We have that in the record. He was making a small amount of money doing referral phone calls to stir up business for another firm, as far as I could tell from the record. That's not true. That is not true, Your Honor. That's what the record said. Where is it in the record that I missed? Where is it in the record? It's on page 40 of my brief. I cut and pasted it. I didn't ask about the brief. I want to know where in the record something shows that he was doing legal work. Your Honor, we tried to introduce it at trial, not afterwards like he said. He refused to allow it. He argued, Judge, you can't look at this. And then what's he do? The judge refused to. Well, the judge refused, but counsel said, Your Honor, you can't, you can't. So we couldn't go to Gilbert Kelley and get information, and then he submits affidavits which are contrary to the Gilbert Kelley website. Gilbert Kelley website, during the 24 months he's receiving benefits, says he is the co-chair of the Workers' Compensation Department. That's on page 40 of our brief. Not that he's doing marketing. So you're getting your facts from the brief at this point. No, that's in the record. It is in the record. We put this into our post-trial briefs, Your Honor. It is in the record through that. Your Honor, I see that I have very little time. I do need to reserve time for rebuttal to respond to the arguments. Okay. You may do so. Thank you, Your Honors. May it please the Court. Excuse me. I'm Scott Calvert of McKinnon Law Group on behalf of appellee Mr. Jeffrey Evans. Your Honors, before I begin, I did want to make one slight correction to the procedural history offered by Mr. Bacharach. This was not actually from summary judgment from the district court. There was a full trial briefing, and there was a trial on the record. There was a trial on the record, yes, Your Honor. Like in Kearney, like Kearney says? Yes, Your Honor. Could you tell me what particular evidence is in the record to show that he continued to be so disabled that he could not work as a lawyer after the short-term disability period? Well, Your Honor, I would refer to the records of Dr. Regin and Dr. Winston, both of who continued to treat him, and they're in the records. Give me a referral to the excerpts here so I can look at what you want me to. Yes, Your Honor. Well, some of Dr. Regin's reports are excerpts of record 322 to 366, 496, 504, and 511. Okay. I want to know where it shows that he's still too disabled to work after that short-term disability period that's not an issue. Well, Your Honor, as late as May 2000, I'm sorry, at ER 230 to 233, that's a record. That's May 21, 2009, so that's well after the 180-day elimination period. Dr. Regin completed a Sun Life document. So Sun Life had asked them to complete a document. It's a psychiatric assessment form noting that Mr. Evans was diagnosed with major depressive disorder and anxiety disorder, and for which he was still taking strong medication, including Welbutrin and Xanax. Okay. Where are you reading from? 230 to 233. Well, I've got that, but it's handwritten, so it's hard for me to find exactly what you're talking about. That would be on the first page, probably 230. I don't have it in front of me. I apologize, Your Honor. The form usually has a diagnosis section where the diagnoses are listed and then later on. Further in that document, Dr. Regin explained that based on his current clinical symptoms, so that's as of May 2009, which is well after the elimination period, his symptoms are dysmorphic mood, generalized anxiety, lack of energy, lack of concentration, and lack of motivation. He would not be able to function as an attorney, especially as a full-time employee. Let's see. You're looking at 232, I think, vocational status. Based on our last visit, it was my assessment that the patient would not be able to return to his previous employment in jobs which require long hours and high level of energy. Is that what you mean? Correct, Your Honor. Does that show he still couldn't practice law or just that he couldn't practice at the same level of intensity? Well, I would say that it says that he couldn't practice law. This is, as I believe Your Honors are aware, this is a regular occupation policy, which means Mr. Evans, in order to show disability… Oh, I see. You're at the top of the page. We have the page in front of us, and there's a different section at the top of the page where you'd quoted from previously. Oh, thank you. In my assessment, the patient would not be able to function as an attorney. Especially as a full-time employee, which is what would be required for him to, I guess, not be eligible for benefits under the policy. Your Honor, I also wanted briefly to address the GAF scores. As I believe Judge Carney noted, while Mr. Evans' GAF scores were in the 50s and 60s, there is a notation that on consecutive days, his GAF score went from 55 to 62. He saw two different physicians on two separate days, and the GAF score jumped seven points in one day. I'm sorry, it actually dropped seven points in one day. Judge Carney noted that given that these doctors who had seen him on consecutive days noted wildly different GAF scores, it's evidence that the GAF scores alone is not sufficient to… That's not wildly different. I mean, psychiatric patients have good days and bad days. I guess all illnesses tend to have good days and bad days. Yes, Your Honor, but what Judge Carney was saying is that the GAF scores alone, and what the case law has said is that the GAF scores alone are not sufficient to… In fact, even the score in the 60s does not mean that somebody has full functioning and they can do the job they were doing before. Again, this is an own occupation policy, excuse me, a regular occupation policy, and Mr. Evans had to have been able to perform the job duties that he was performing before, but the GAF scores and the medical evidence do not show that. Your Honor, I wanted to note that as a planned fiduciary, Sun Life has a responsibility to act in the interest of the participants and to review the plan in their interest. However, at every stage, Sun Life acted in a manner consistent with the conflict of interest in its own interest. It ignored the evidence of Dr. Schwartz. You probably should acknowledge that your client's behavior was peculiar, and peculiar in a way that it's not surprising to me that somebody is suspicious. I mean, because he's an attorney, he's knowledgeable, he goes off on a bender, he comes back. It's hard to make sense out of the medical records, but I'm not surprised somebody is suspicious that maybe this is contrived. So why isn't Sun Life entitled to inquire into that? Well, they are entitled to inquire into that, but they did not inquire into that. As Judge Carney criticized them for, if they had questions about, I would not classify this as a bender, first of all. I would say a psychotic break, given that he was involuntarily hospitalized on a 5150. But Sun Life can inquire, but they chose not to. Judge Carney pointed out that if they really had questions about his ability and what happened between December 1st and December 13th, they could have called his wife. They didn't do that. They could have talked to his employer. They didn't do that. Well, the employer didn't have contact with him. Well, his employer had contact with him on December 1st, which is they could have seen he attended a partner's meeting on his last day of work. They could have, they had the opportunity to talk to them to see. Your client doesn't allege that he was disabled on that day, does he? No, but I would, no, Your Honor. But, I mean, we're getting into assumptions that aren't on the administrative record, but I would assume that, you know, a psychotic break is not, it's a gradual thing. I would assume that he was not in full, you know, cognitive. I went to partner's meetings where I had plenty of partners. It struck me as not always being there, and yet I can't say that I could diagnose them as. Well, Your Honor, to get back to your question, Sun Life certainly has the right to inquire. The thing that made me most suspicious, frankly,  I didn't think that was possible. Well, Your Honor, I did not work at that firm, so I don't know how that's possible, but. No, I mean physically possible for a person. Well, again, Your Honor, I. I mean, ideally with a firm. Maybe, you know, there's seven days in a week and there's 24 hours in a day. There's also, that could be a reason why he had a psychotic break. However. It could be creative time keeping, too, and you might begin to suspect the bona fides of somebody who claims to have built a kind of. Well, Your Honor, I would dispute that, but even acknowledging that. Sun Life has the opportunity to do an investigation. They did not do that. As Your Honors pointed out, they only had one medical review conducted during the long-term disability claim. They also had a year. They took a year between his appeal in March 2009 and the final denial in March 2010. They had a year. They could have done any of these inquiries that Your Honors are referencing. They said that they had trouble getting his records, and I kind of wondered why they didn't do an independent medical examination with their own psychiatrist. Did you provide waivers if they requested them so that they could get the medical records? They never requested them. I think this. They didn't ask. Well, usually the way it worked, in my practice anyway, is whichever of us is on the defense side sends a letter to the plaintiff's lawyer saying, give me five signed waivers of medical confidentiality, and then you send those off with a $100 check and ask for a Xerox of the records from the doctor. Well, Your Honor, this was during. First of all, he did not have counsel during the claim period, but Sun Life had the opportunity and the right under the plaintiff. Did Sun Life ask for waivers that were not signed? No, Your Honor. The only thing they. . . Oh, I'm sorry. Actually, I misspoke, Your Honor. He refused to give it because he said, I've already provided the Xerox. Yes, that's what I was about to say. I misspoke. They said, give us a waiver so we can get the rest of the records from Dr. Winston, and he said, you have all the records from Dr. Winston. I stopped seeing Dr. Winston. That's the only thing he didn't give them, but he didn't. . . They didn't ask for an IME. They had the right. They never asked for an IME. He didn't say, no, you can't examine me. They never asked. They never asked for any additional medical documents. They never submitted, despite Your Honor's noting that they indicated they would, they never submitted the medical records to another physician to review. In fact, one of their physicians, Dr. Pierce, who reviewed it during the short-term disability period, said it was reasonable to conclude that he was disabled on December 2nd. But they never acknowledged that. They never attempted to distinguish that. I think it is a problem for Sun Life in that they never acknowledged that. . . They never asked for an IME. They never asked for an IME, but they never attempted to. . . When was the claim for long-term benefits submitted? The claim for long-term benefits was submitted six months after the disability, so it would have been in late May 2008. So there's really . . . I mean, an IME is not going to speak very much to his condition during the elimination period because the elimination period has gone by. No, Your Honor, but they had already approved his . . . they found him disabled during the elimination period because they paid him short-term disability benefits. And we're . . . you know, these benefits is not . . . I'm not sure that answers my question or my observation. It's true they paid the short-term benefits. That doesn't bind them to pay the long-term benefits. And you're arguing they should have done an examination. But by the time they got the long-term benefit claim, the time period had passed. So an examination at that time would have had somewhat limited value. Well, it would have had limited value necessarily for the elimination period. But there were still two years of benefits that he was potentially entitled to benefits. That's another question I want to come to because it strikes me it's odd the way the parties are fighting over the subsequent 18 months. Was that actually litigated in the district court? I don't understand your question, Your Honor. Which 18 months? Well, the two years of benefits. We got the elimination period, and there's a lot of dispute about that. But what did the district court look at with regard to his condition for the remainder of the two years of benefits? I mean, the court awarded two years of benefits. Correct, Your Honor. Was there evidence of disability during that time? Yes, Your Honor. Again, I would refer to the records of Dr. Winston and Dr. Reggie, and those are the medical records. And they cover more than just the six months. He continued to see Dr. Winston for a couple of months past the elimination period, and he continued to see Dr. Regine afterward. He continued to take Wellbutrin and Xanax, and like I noted earlier, the record at 230 to 233, those are medical records that are well after the elimination period, Your Honor. Do they go all the way through the period where the district court ordered benefits the full two years? No, they do not, Your Honor. What's that order based on? Well, the order is based on the fact that Sun Life had the opportunity to conduct an examination and to do a full and thorough review, and that under Gross-Solomon and those cases, Judge Carney did not think that Sun Life had the right or should have had the opportunity to conduct, to take a second bite of the apple. How does that prove that your client was actually disabled for the full-time period he received benefits? Well, Your Honor, it doesn't. The medical records... During at least part of that time, he was conducting some degree of business with a law firm, disputed what, but he's not in the same condition that he was at the beginning of the period. So why is the court able to presume continuing full disability? Well, Your Honor, I would say that Sun Life is controlling the administrative record in this case. Sun Life has every opportunity when they're examining the claim to find whatever information they want within reason. They could have done an examination. They could have asked him for additional documents. They stopped asking him for documents. If this is where Your Honor is going, I would say that... Well, the payment for two years wasn't an issue, was it? Once they determined that he didn't have the disability for the required length of time, there was no reason for them to say, well, now we're going to consider if he was, whether we're going to pay it for two years. Well, Your Honor, I would note... It sounds like to me that the two-year question was something that's presented to the court in terms of the relief that you request. Well, Your Honor... So my question was, was there an issue in the court that determined this case that we're here in appeal? Was there an issue before the court raised by the parties as to how long the remedy should be or how long the disability payment should be if, in fact, it was shown that he had the full-year requirement? Thank you, Your Honor. The reason it would focus on 24 months is because this is a psychiatric illness, and under the plan the most benefits he would be entitled to is to 24 months. What I would say is that the very last day of the final denial, the day when Sun Life made their final denial, was in March 2010, which is about two and a half months before the ending of the 24 months. So if Your Honors are not inclined to award Mr. Evans 24 months of benefits or to affirm Judge Carney's order awarding him 24 months of benefits, I would say that at the very least he should get benefits through the last date of the denial decision, which is in 2010, which is about 20 and a half, 21 months. Anything else? You have eight seconds. Yes. No, Your Honor. Thank you very much. Thank you. Your Honors, I don't have much more than that, so I better be brief. Page 231 of the record, Judge Kleinfeld talks about how he has used alcohol and recreational drugs. So that's in the record. That's from his own Dr. Redgian. We also had counsel saying that the treatment from Dr. Winston lasted beyond the elimination period. Not true. It ended in May 2008, a few weeks beforehand, early May. The next problem that he has is he's saying that there was treatment throughout or most of this period. No. The treatment from Dr. Redgian ended December 2008. That report that he cited to, and this is on page 232 of the record excerpts, says that he last saw him on 12-17-2008. There's 16 more months left of benefits at that point. There's no record of any treatment. There's no record of any problems, and this policy, by the way, has a continuing care requirement. That notation on 232 is the last day of visit as of the time of this notation. Do we know there are no records after this date? After May 21, 2009. This is dated May 21, 2009, by the way, on the next page. There's no other records past that in the administrative record that I'm aware of. Did you see? Oh, I see. Thanks. So it's simply not true that he continued to treat. He didn't. Counsel, Your Honor, I see I'm out of time. May I make? Wind it up. All right, I will. I'd just like to make this one final point, Your Honors. Clearly, there's no justification for payment of 24 months. We believe that the award satisfying the elimination period is also wrong, but counsel made the same misargument that he made four times in his brief. The consultant for Sunlight did not state that as of December 2, 2007, he was disabled. He said, as of that date through January 31, that's four and a half months before the elimination period ended. So that's an inaccurate statement that was made throughout his brief. Again, Your Honors, thank you for your time. We believe the entire judgment should be vacated and a judgment entered in favor of Sunlight, but at the very least, the benefit award is improper. Thank you, Your Honors. Thank you. We thank both counsel for your argument. The case just argued is submitted.
judges: Kleinfeld, Benavides, Clifton